IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

FILED
IN OPEN COURT

MAY 2 6 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-CR-91-CMH |
| BENNIE EARL MAGEE, | |
| Defendant. | |

### STATEMENT OF FACTS

The United States and the defendant, BENNIE EARL MAGEE ("the defendant" or "MAGEE"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence, all dates listed being on or about the date indicated:

1.      From at least in or around April 2020 through at least in or about March 2021, in the Eastern District of Virginia and elsewhere, the defendant did knowingly, in connection with the COVID-19 relief loans applied for in the name of the business entities described below, devise and participate in a scheme and artifice to defraud financial institutions and the Small Business Administration ("SBA"), and to obtain money and property from them by means of materially false pretenses, representations, and promises concerning numbers of employees, quarterly and annual payroll expenses, annual revenues, and fictitious IRS tax returns and payroll documents submitted in support of said loan applications, all in violation of Title 18, United States Code, Sections 1343 and 2.

2.      MAGEE resided and worked in Manassas, in the Eastern District of Virginia, where he maintained a home office as well as a business location.

3.      M.G. resided in Bealeton, Virginia, in the Western District of Virginia, but M.G.

1

worked in Manassas, Virginia, in the Eastern District of Virginia, with MAGEE. M.G. maintained a work desk in the home office of MAGEE in Manassas. M.G. also maintained another office in a business facility that MAGEE leased in Manassas. M.G. and MAGEE had a close professional and personal relationship. M.G. would take direction from MAGEE in connection with applications for Paycheck Protection Program ("PPP") and Economic Injury Disaster Loans ("EIDL") discussed below.

4.    J.S. was MAGEE's brother-in-law. J.S. worked with MAGEE in Manassas and took direction from MAGEE in connection with applications for the PPP and EIDL loans discussed below.

5.    At all relevant times, MAGEE controlled the following entities:

     a.    INFINITY SOLUTIONS GROUP LLC

     b.    UNITED SPORTSPLEX, LLC dba ELITE SPORTS

     c.    CLEVERFUZE, LLC

     d.    MINORITY OWNED BUSINESS COALITION, IIC.

     e.    UNITED BASKETBALL ASSOCIATION, LLC

     f.    BULL RUN CAPITAL INVESTMENTS, LLC

     g.    UNITED FUTSAL LEAGUE, LLC

     h.    BOUNCE MANIA, LLC

     i.    ONYX SPECIAL POLICE, LLC

     j.    UNITED HEALTH & REHABILITATION CENTER, LLC

     k.    GIFTED HANDS MOVING COMPANY, LLC

Each of these entities was incorporated in the Commonwealth of Virginia and had as its registered agent either MAGEE, a holding company controlled by MAGEE (e.g., Bull Run Capital Investments, LLC), or an associate of MAGEE. Each maintained a business bank account at TD Bank, a federally insured financial institution as defined in 18 U.S.C. § 20.

6.    M.G. controlled an entity called INFINITY COMMUNICATIONS SOLUTIONS,

LLC, ("ICS") which had previously been incorporated in Ohio. Around May 2020, M.G. and MAGEE incorporated ICS in the Commonwealth of Virginia. M.G. was the resident agent of ICS in Virginia. ICS maintained its business bank account at TD Bank.

7.      J.S. was the registered agent for the following Virginia entities: GREEN TEAM LIMOUSINE, LLC; BLACK HAT TRANSPORTATION, LLC; SLAIBY7 INVESTMENTS, LLC; and HEALTH N WEALTH WORLD, LLC. All of these entities had bank accounts at TD Bank.

8.      MAGEE had access to the books and records of all the entities described in this Statement of Facts. He applied for PPP and EIDL loans for these entities and he knew that the numbers of employees, the identities of the employees, the payroll figures, the revenue figures, and the supporting documents he was providing to the lender and the U.S. Government in support of the applications for PPP and EIDL loans were materially inflated..

*The Scheme and Artifice to Defraud and Its Manner and Means*

9.      By at least early April 2020, MAGEE had learned about the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loans ("EIDL"). He discussed applying for EIDL and PPP loans with M.G. and J.S. for their entities, as well as for his own entities. In total, MAGEE applied for EIDL and PPP loans for 17 distinct entities.

10.      Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), the PPP endeavored to lend money to certain businesses for the primary purpose of providing money to fund and maintain payroll and cover other eligible business expenses. Under the terms of the PPP, all PPP loans were 100% guaranteed by the SBA. Being guaranteed by the SBA means that if there is a default on the loan, SBA will reimburse the lender for the remaining balance once certain conditions and requirements set forth in the SBA regulations have been satisfied. Thus,

fraud on the PPP can render the U.S. Government the ultimate victim.

11.     To qualify for the loans, MAGEE knowingly and intentionally inflated and falsified material information that he supplied to financial institutions and the SBA in connection with applying for EIDL and PPP loans. MAGEE vastly inflated the numbers of employees each entity claimed. MAGEE materially inflated quarterly and annual payroll figures for each entity. MAGEE created falsified payroll records, listing the true names of real people without their consent, as employees of the entities, when, in truth and in fact, as he well knew, the majority of these individuals never worked for those entities. MAGEE inflated and falsified company revenues for each entity. MAGEE also created falsified IRS business tax returns for the entities applying for PPP loans, and falsely certified or caused to be falsely certified that such forms had been filed with the IRS.

12.     For example, for the supporting documentation for several entities' PPP loan applications and loan forgiveness applications, MAGEE created numerous backdated, falsified IRS Forms 940 for Tax Year 2019, showing falsified and inflated wages paid to employees, as well as federal unemployment tax figures and calculations. Likewise, MAGEE created falsified IRS Tax Forms 941 for the first quarter of 2020 ("1Q2020") for each entity applying for a PPP loan. This form falsely listed grossly inflated numbers of employees for each entity, fictious and inflated gross wages, and falsified withholding taxes. In truth and in fact, these entities had filed no such returns with the IRS, and the information in the tax documents, including data about employees, wages, and taxes paid, was materially false. MAGEE submitted each one to the bank with the intent to influence its lending decision.

13.     MAGEE would populate the loan applications and create the false documents and submit them to lenders and the SBA from his home office in Manassas, Virginia, using his

4

computer to apply online. Each online application described below caused an interstate wire that was foreseeable to MAGEE, as the SBA servers were located in Iowa, and TD Bank in New Jersey.

14.     Once the borrower's loan application was approved and the funds were disbursed, the SBA would pay the lender a processing fee of 1–5% based on the amount of the loan.

15.     It was an object of the scheme to obtain EIDL and PPP loans for the purpose of investing in crypto currency ventures and to spend the money on other unauthorized purposes, although some of the money went toward payroll.

*Fraudulent Loans MAGEE Prepared for M.G.'s Entity*

16.     In 2019, M.G.'s entity, ICS, had little revenue and was essentially only employing M.G. The workload for ICS in 2019 and 2020 was comprised solely of internal information technology related projects for a business controlled by MAGEE. M.G. stored materials at a warehouse leased by MAGEE to do work for MAGEE. Other than M.G., ICS had no employees and had no payroll in 2019 and 2020. ICS generated minimal annual revenues in both 2019 and 2020.

17.     By early April 2020, MAGEE approached M.G. and told M.G. that MAGEE could help him obtain capital for ICS through  PPP loans. . MAGEE and M.G. knew that the programs were to provide funds to maintain the entity's payroll and for other authorized business expenses.

18.     Working in his home office in Manassas, around April 3, 2020, MAGEE submitted an EIDL application for ICS which falsely listed five (5) employees and reported 2019 gross revenues of $777,167, in an attempt to obtain an EDIL loan from the SBA in an amount of approximately $146,356. The SBA denied the EIDL application. The SBA did, however, give ICS a $5,000 EIDL grant based on the false representation that ICS had five employees ($1,000 per employee).

19.     On May 27, 2020, MAGEE and M.G. caused ICS to be incorporated in Virginia.

20.     On June 2, 2020, MAGEE filled out a "first draw" PPP loan application for ICS and submitted it to TD Bank with M.G.'s knowledge and approval. On the application form for ICS, MAGEE listed 26 employees and a monthly payroll of $290,318—which both MAGEE and M.G. knew was false—to obtain a PPP loan in the amount of $725,795. M.G. initialed next to the application's certifications and signed the loan application knowing the material information concerning employees and payroll contained in it was false.

21.     To support the first draw loan application, MAGEE, with M.G.'s knowledge and approval, created false IRS business tax returns for ICS, to submit to TD Bank. For the Tax Year 2019, MAGEE created a backdated IRS form 940, falsely representing that ICS had paid its employees $3,483,819.13. The form included false federal unemployment tax figures and calculations. M.G. signed the form, backdated it to January 3, 2020, all with knowledge that MAGEE would submit it to the lender.

22.     Corresponding to Tax Year 2019, MAGEE also created a falsified payroll summary for ICS where he listed the actual names of 46 individuals he knew, claiming that they were on ICS's payroll when they in fact were not. Those names included MAGEE's children, extended family members, and other people with whom MAGEE interacted or knew. The spreadsheet listed false salaries, hours worked, gross pay, state and federal taxes, and social security and Medicare taxes supposedly withheld. It provided fictitious amounts of net pay for each listed individual, and grand totals for all categories. MAGEE and M.G. submitted this document to the bank knowing it was fabricated and false.

23.     MAGEE, with M.G.'s knowledge and approval, created a false IRS Tax Form 941 for the first quarter of 2020 ("1Q2020"). This form falsely claimed ICS had paid 26 employees

$480,618.92 in gross wages, with $118,046.06 withheld in taxes. It further falsely represented that ICS had paid $191,580.76 to the IRS in withholdings and other taxes for 1Q 2020. M.G. signed this false tax form, which was dated April 10, 2020. In truth and in fact, ICS had filed no such return with the IRS, and the document, including its data about employees, wages, and taxes paid, was materially false. M.G. and MAGEE submitted it to the bank with the intent to influence its lending decision for the SBA-backed PPP loan.

24.     Corresponding to 1Q2020, MAGEE with the knowledge and approval of M.G., also created a false quarterly payroll document for January–March 2020. In it, MAGEE listed 26 employees using the names of real individuals without their consent, and falsely listed salaries, hours worked, gross pay, state and federal taxes, and social security and Medicare taxes supposedly withheld. It provided fictitious amounts of net pay for each listed individual, and grand totals for all categories. MAGEE, with M.G.'s consent, submitted this document to the bank knowing it was fabricated and false.

25.     TD Bank approved ICS for a PPP loan and on June 8, 2020, TD Bank deposited $725,795 into the business bank account of ICS, of which M.G. was the signatory. The account balance before this deposit was approximately $6,336. Four days later, M.G. wrote a check to MAGEE's company for $420,000. On June 23, 2020, the SBA deposited $5,000 into the ICS bank account.

26.     On March 16, 2021, MAGEE prepared and submitted a second round ("second draw") PPP loan application for ICS with M.G.'s knowledge and approval. This loan was also for $725,795. This application falsely listed 34 employees and claimed a monthly payroll of $290,318. The second draw loan application also contained a field for reduction in gross receipts. In this field, MAGEE falsely reported Second Quarter 2020 gross receipts of $783,792.90, which were

purportedly a reduction from Second Quarter of 2019 gross receipts, which MAGEE listed as $1,150,968.02. All of these numbers were false and were designed to qualify for the second round of PPP loans by showing at least a 25% reduction in gross revenue from the same quarter of the previous year. M.G. signed and initialed this second draw loan application to TD Bank, knowing that it contained material misrepresentations about ICS's employee headcount, payroll, and gross receipts.

27.     In support of this second round of PPP loan application for ICS, MAGEE created a document entitled "2ND QTR Profit & Loss Comparison." It was populated with falsified numbers for company income, cost of goods sold, gross profits, expenses, and net income, along with a fraudulent calculation of percent change, showing a 31.5% decline in ordinary income over comparable quarters from 2019 to 2020. M.G. reviewed this document that MAGEE presented to him, initialed key fake numbers, and signed it as "President/CEO" of ICS, dating it February 17, 2021. MAGEE and M.G. also submitted this document to the bank via the internet from MAGEE's home office with the intent to influence the bank's lending decision.

28.     On March 22, 2021, TD Bank deposited $725,795 into ICS's business bank account. Two days later, M.G. wrote a check for $200,000 to MAGEE's company. MAGEE also had control over ICS's Intuit QuickBooks and payroll processing. MAGEE used this authority and access to pay one of his children and M.G. tens of thousands of dollars through payroll.

29.     MAGEE indicated to M.G. that he would be able to obtain forgiveness for the loans and told M.G. that he would handle applying for loan forgiveness. When M.G. started receiving default notices from T.D. Bank noting that the ICS loans were overdue, M.G. informed MAGEE, who indicated that he would take care of it.

30.     M.G.  lost some of s of ICS's PPP loan money in crypto currency ventures.

8

MAGEE lost in crypto some of the PPP money that ICS had paid Bull Run.

*Fraudulent EIDL and PPP Loans MAGEE Obtained for His Own Entities*

31.     Using the same manner and means as he had for M.G.s loans, MAGEE successfully applied for the following EIDL loans for his own entities with the SBA between March 30, 2020, and September 1, 2020, as follows:

| Company | Appl. Date | # Emps. | 2019 Gross Revenue Claimed | EIDL Loan Amt.[1] |
|---|---|---|---|---|
| INFINITY SOLUTIONS GROUP LLC | 4/1/2020 | 15 | $1,944,804.00 | $160,000.00 |
| UNITED SPORTSPLEX, LLC | 4/7/2020 | 17 | $542,400.00 | $160,000.00 |
| MINORITY OWNED BUSINESS COALITION | 5/13/2020 | 37 | $7,593,540.00 | $160,000.00 |
| BULL RUN CAPITAL INVESTMENTS, LLC | 9/1/2020 | 13 | $2,019,611.00 | $150,000.00 |
| BOUNCE MANIA, LLC | 4/3/2020 | 6 | $175,568.00 | $74,000.00 |
| GIFTED HANDS MOVING COMPANY, LLC | 9/1/2020 | 18 | $2,482,320.00 | $150,000.00 |
| | | | Total EIDL (MAGEE Entities) | $854,000.00 |

32.     The numbers of employees and gross revenues for each entity above were all materially inflated–in some cases, vastly inflated–causing the SBA to part with money as indicated in the table above.

33.     Using the same manner and means as he had for M.G.'s loans, MAGEE successfully applied for the following first draw PPP loans on the dates indicated:

| Company | Appl. Date | # Emps. | Monthly Payroll | 1st Draw PPP Loan Amt |
|---|---|---|---|---|
| INFINITY SOLUTIONS GROUP LLC | 4/7/2020 | 6 | $17,529 | $43,822 |
| UNITED SPORTSPLEX, LLC | 4/27/2020 | 12 | $6,931 | $17,327 |
| CLEVERFUZE, LLC | 4/28/2020 | 12 | $60,764 | $150,000 |
| MINORITY OWNED BUSINESS COALITION | 5/3/2020 | 18 | $231,892 | $570,000 |
| UNITED BASKETBALL ASSOCIATION, LLC | 5/6/2020 | 16 | $63,597 | $158,000 |
| BULL RUN CAPITAL INVESTMENTS, LLC | 5/8/2020 | 6 | $85,789 | $214,422 |
| UNITED FUTSAL LEAGUE, LLC | 6/8/2020 | 13 | $159,508 | $398,770 |
| BOUNCE MANIA, LLC | 6/23/2020 | 19 | $70,715 | $176,788 |
| ONYX SPECIAL POLICE, LLC | 1/30/2021 | 34 | $131,566 | $202,425 |

---

[1] Amounts in this column include EIDL and EIDL advance (e.g., grant) for the relevant company.

| | | | | |
|---|---|---|---|---|
| UNITED HEALTH & REHABILITATION CENTER, LLC | 4/7/2021 | 23 | $64,129 | $150,000 |
| GIFTED HANDS MOVING COMPANY, LLC | 1/20/2021 | 38 | $168,406 | $421,015 |
| Total First Draw PPP (MAGEE Entities) | | | | $2,502,569 |

34.     The numbers of employees and monthly payroll for each entity above were all materially inflated, in some cases vastly, causing TD Bank to part with the money indicated above.

35.     Using the same manner and means as he had for obtaining M.G.'s second draw PPP loan, MAGEE fraudulently obtained the following second draw PPP loans for his own entities by falsely inflating numbers of employees, fabricating payroll figures, and falsely showing at least a 25% decline on quarterly gross revenue from 2019 to 2020, as indicated in the table below:

| Company | Appl. Date | # Emps | Monthly Payroll | 2nd Draw PPP Loan Amt |
|---|---|---|---|---|
| INFINITY SOLUTIONS GROUP LLC | 1/19/2021 | 13 | $54,658 | $136,645 |
| UNITED SPORTSPLEX, LLC/ELITE SPORTS | 2/9/2021 | 21 | $62,583 | $150,000 |
| CLEVERFUZE, LLC | 2/1/2021 | 16 | $60,764 | $150,000 |
| MINORITY OWNED BUSINESS COALITION | 2/13/2021 | 37 | $231,892 | $579,730 |
| UNITED BASKETBALL ASSOCIATION, LLC | 2/5/2021 | 22 | $63,597 | $150,000 |
| BOUNCE MANIA, LLC | 2/2/2021 | 38 | $70,715 | $150,000 |
| Total Second Draw PPP (MAGEE Entities) | | | | $1,316,375 |

36.     The numbers of employees and monthly payroll for each entity above were all materially inflated, in some cases vastly, causing TD Bank to part with the money indicated above.

37.     Just from the applications for his own entities, MAGEE wrongfully derived $3,818,944 from TD Bank and $854,000 directly from the SBA as a result of the scheme to defraud. This is in addition to the $620,000 in proceeds he had derived from M.G., described above.

38.     MAGEE used a portion of the proceeds of the scheme to invest in crypto currency, to pay private secondary school tuition, and to pay for private university tuition for his children. MAGEE would also pay himself and family members money via Intuit QuickBooks payroll.

10

MAGEE purchased cars, and made E-Trade investments with the proceeds. MAGEE also made substantial mortgage payments on his residence, which was in pre-foreclosure prior to MAGEE's receipt of PPP funds.

*Fraudulent PPP Loans for Entities Associated with J.S.*

39.     MAGEE also fraudulently obtained first round PPP loans for the following entities associated with J.S., by using the same manner and means to execute the scheme, described above:

| Company | Appl. Date | # Emps | Monthly Payroll | 1st Draw PPP Loan Amt |
|---|---|---|---|---|
| GREEN TEAM LIMOUSINE | 5/5/2020 | 6 | $20,229 | $50,000 |
| BLACK HAT TRANSPORTATION, LLC | 5/15/2020 | 7 | $98,291 | $245,727 |
| SLAIBY7 INVESTMENTS, LLC | 5/26/2020 | 10 | $137,273 | $343,182 |
| HEALTH N WEALTH WORLD, LLC | 3/24/2021 | 13 | $60,724 | $151,810 |
| Total First Draw PPP (J.S. Entities) | | | | $790,719 |

40.     The numbers of employees and monthly payroll for each entity above were all materially inflated, in some cases vastly, causing TD Bank to part with the money indicated above.

41.     MAGEE fraudulently obtained second round PPP loans for the following entities associated with J.S., by using the same manner and means to execute the scheme, described above:

| Company | Appl. Date | # Emps | Monthly Payroll | 2nd Draw PPP Loan Amt |
|---|---|---|---|---|
| GREEN TEAM LIMOUSINE | 2/13/2021 | 14 | $46,087 | $115,217 |
| BLACK HAT TRANSPORTATION, LLC | 3/16/2021 | 15 | $98,291 | $245,727 |
| SLAIBY7 INVESTMENTS, LLC | 2/19/2021 | 30 | $137,273 | $343,182 |
| Total Second Draw PPP (J.S. entities) | | | | $704,126 |

42.     The numbers of employees and monthly payroll for each entity above were all materially inflated, in some cases vastly, causing TD Bank to part with the money indicated above.

43.     MAGEE fraudulently caused TD Bank to part with $1,494,845 in PPP loan proceeds for entities associated with J.S.

44.     MAGEE had access to the bank accounts associated with J.S.'s business entities.

J.S. used the PPP loan proceeds to pay a home loan, to invest in the stock market, to invest in crypto currency, and to pay for vacation expenses. J.S. loaned a portion of the PPP loan proceeds to Bull Run Capital, which MAGEE owned.

*Loan Forgiveness Fraud*

45.    From approximately March 8, 2021 through at least September 27, 2021, MAGEE, in the Eastern District of Virginia and elsewhere, submitted applications for loan forgiveness for many of the loans described above. In each case, MAGEE drafted the forgiveness application and falsely certified that the PPP money had been used either solely for payroll or for authorized purposes such as payroll, rent and utilities. MAGEE also continued to materially inflate the numbers of employees to whom each company had purportedly paid payroll. In some instances, MAGEE created additional false documentation to supply along with the forgiveness application to make it appear as if the funds were used as required by the program. MAGEE falsified TD Bank statements to show that funds were used for rent or utilities and supplied updated false payroll summaries.

46.    Relying on these false representations and false certifications, the SBA forgave 11 of the first and second draw PPP loans. Those loans, therefore, did not have to be paid back by MAGEE, J.S., or M.G. The forgiven loans totaled $1,263,011.

47.    For the 13 PPP loans that were not forgiven by the SBA totaling $4,878,928, the borrower was required to repay the loan balance with 1% interest. MAGEE, J.S. and M.G. were sent notices of default for these unforgiven loans. The defaulted loans have not been repaid and are delinquent. Six of the 13 delinquent PPP loans were "charged off" by the SBA. If a borrower becomes more than 60 days past due, the SBA will provide the guaranty on the loan to the lender and "charge off" the loan. Charge off does not affect the SBA's rights against the delinquent

12

borrower.

*State Unemployment Insurance Collections*

48.      From April 4, 2020 through July 25, 2020, MAGEE received 17 weeks of unemployment payments through claims submitted to the Virginia Employment Commission, for a total of $16,626 in unemployment payments remitted to his Bull Run Capital Investments, LLC bank account at TD Bank.

*          *          *

49.      In sum, MAGEE's scheme to defraud caused TD Bank to disburse a total of $6,765,379 in PPP loans, and the SBA to part with $854,000 in EIDL loans, for a total actual loss of $7,619,379. MAGEE personally derived approximately $5,292,944 from this fraud scheme.

50.      This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

51.      MAGEE also does not contest any of the factual allegations contained in the Criminal Information.

52.      Furthermore, this statement of facts is an admission of the defendant that can be used in subsequent court proceedings against him. This statement of facts does not constitute and are not part of compromise negotiations under Fed. R. Evid. 410 or any other provision of federal law. As such, the defendant agrees that this statement of facts should not be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law.

13

53.     The actions of the defendant, as recounted above, were in all respects knowing

and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date:   May 12, 2023          By:

Russell L. Carlberg
Assistant United States Attorney

14

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, BENNIE EARL MAGEE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

BENNIE EARL MAGEE

I am Stuart Sears, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Stuart Sears, Esq.
Attorney for BENNIE EARL MAGEE

15